UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 1:19-CV-00140 |
| § | |
| BELLA'S BAR & GRILL LLC, *et al.*, § | |
| § | |
| Defendants. § | |

## ORDER AND OPINION

Plaintiff Joe Hand Promotions, Inc. (JHP) is a commercial licensor of sports and entertainment programming to commercial businesses. JHP brings suit against Defendants Bella's Bar & Grill LLC, d/b/a Bella's Bar & Grill, and its owner and manager, Daniel Zuniga, alleging that they aired the boxing match *Floyd Mayweather, Jr. vs. Conor McGregor* (the Event) without authorization and without paying a sublicense fee to JHP. (Complaint, Doc. 1, 6–7 (alleging causes of action under 17 U.S.C. §§ 106 and 501 (Copyright Act), and 47 U.S.C. §§ 605 or 553 (Communications Act))

JHP moves for summary judgment on its cause of action under the Copyright Act.[1] (Motion, Doc. 23)

I. **Summary Judgment Facts**

A. **Admissions**

Both parties have submitted summary judgment evidence for the Court's consideration. During the course of discovery, however, both Zuniga and Bella's failed to respond or object to properly-served requests for admissions under Federal Rule of Civil Procedure 36. (JHP's Req. for Admissions, Doc. 23-7) As a result, the factual statements in those requests for admissions are deemed admitted and conclusively established.[2] FED. R. CIV. P. 36(b); *see In re Carney*, 258 F.3d 415, 421–22 (5th Cir. 2001) (affirming summary judgment based on facts resulting from a

---

[1] JHP titles its Motion as one for "Final Summary Judgment", but as JHP does not move for summary judgment on all its causes of action, the Motion is one for partial summary judgment.
[2] Defendants also have not moved to withdraw or amend the admissions.

party's failure to respond to a request for admissions). The summary judgment facts for purpose of the Motion stem in large measure from these admissions. As to factual matters not established through the admissions, the Court views the competent summary judgment evidence in the light most favorable to Defendants. *See* FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Facts

In 2017, JHP "purchased and retained the exclusive right to distribute and publicly perform the *Floyd Mayweather, Jr. vs. Conor McGregor* broadcast, including all undercard bouts and commentary" to commercial businesses in the United States. (J. Hand Decl., Doc. 23-2, ¶ 4) JHP's Licensing Agreement with the Event's copyright author and owner, Showtime Networks Inc., granted JHP the exclusive commercial rights "to distribute the public exhibition of the audiovisual presentation of the Event to commercial establishments" in the state of Texas. (Copyright Registration, Doc. 23-3; J. Hand Decl., Doc. 23-2, ¶ 6; Lic. Agree., Doc. 23-4, ¶ 1) The contract also granted JHP the "right to take enforcement measures, prosecute and commence legal actions" stemming from any "unauthorized exploitation" of JHP's rights. (J. Hand Decl., Doc. 23-2, ¶ 6; Lic. Agree., Doc. 23-4, ¶ 7) For a commercial business to receive and broadcast the Event, the location was required to pay JHP a commercial sublicense fee based on the capacity or fire code occupancy of the establishment. (J. Hand Decl., Doc. 23-2, ¶ 11; Event Rate Card, Doc. 23-5) Once a business paid the commercial fee, JHP would then "authorize the receipt of the Event through the establishment's television programming provider." (J. Hand Decl., Doc. 23-2, ¶ 13)

Bella's is a commercial business that operates as a restaurant and bar, and Zuniga is its principal, owner, member, manager, and registered agent.[3] (Bella's Admissions, Doc. 23-7, 2; Zuniga Admissions, Doc. 23-7, 7; Cert. of Formation, Doc. 23-1, 1) Zuniga "arranged cable service at [Bella's] by telephone". (Zuniga Aff., Doc. 25-1, 3) On August 26, 2017, the date of the

---

[3] Zuniga affies that Bella's no longer operates as a business. (Zuniga Aff., Doc. 25-1, 3)

2 / 12

Event, Bella's was open and willfully broadcasted the Event to numerous patrons. (Bella's Admissions, Doc. 23-7, 2–3; Zuniga Admissions, Doc. 23-7, 8) Zuniga was at the restaurant that day, had the right and ability to supervise Bella's, and witnessed the Event's broadcast. (Zuniga Admissions, Doc. 23-7, 2) Both Bella's and Zuniga possessed a financial interest in and derived financial benefit from the restaurant the day the Event was broadcast there. (Bella's Admissions, Doc. 23-7, 4; Zuniga Admissions, Doc. 23-7, 9)

On the day of the Event, JHP's Event Auditor Wanda Castillo witnessed Defendants air the Event to about 115 restaurant patrons. (Castillo Aff., Doc. 23-6, 1–2; Photos, Doc. 23-6, 3–25) The restaurant has capacity for about 180 people (Castillo Aff., Doc. 23-6, 2) Defendants "did not pay the commercial fees to JHP to legally receive the Event." (J. Hand Decl., Doc. 23-2, ¶ 14; Bella's Admissions, Doc. 23-7, 3; Zuniga Admissions, Doc. 23-7, 8) Instead, Defendants obtained the Event through a residential cable or satellite account. (Bella's Admissions, Doc. 23-7, 3; Zuniga Admissions, Doc. 23-7, 8) Based on the 180-person capacity of the restaurant, Defendants would have had to pay a fee of $6,700.00 to legally broadcast the Event. (J. Hand Decl., Doc. 23-2, ¶ 11; Event Rate Card, Doc. 23-5, 1)

### C. Objections to Summary Judgment Evidence

#### 1. Defendants' Objections

Defendants "object[] to Plaintiff's summary judgment evidence", but do not contend that any specific evidence that JHP has offered is not competent summary judgment evidence. (Response, Doc. 25, 2–3) As a result, the Court does not consider the Response as asserting objections to the summary judgment evidence that JHP has submitted.

#### 2. JHP's Objections

JHP objects to various statements in Defendant's Response, arguing that Defendants offer no competent summary judgment evidence to support those factual statements or that Defendants cannot present such evidence because the facts have been conclusively established through admissions. (Reply, Doc. 27, ¶¶ 7–12 (contesting, for example, the Defendants' ability

to deny knowing that Bella's broadcast of the Event was wrongful)) The Court agrees that statements in a party's brief do not constitute competent summary judgment evidence. *See* FED. R. CIV. P. 56(c)(1)(A) (listing categories of proper evidence for purposes of summary judgment). The only evidence that Defendants offer that falls within Rule 56(c) is the Affidavit of Daniel Zuniga. (Doc. 25-1) Aside from statements in that affidavit, Defendants offer no competent summary judgment evidence. In addition, to the extent that Zuniga's affidavit seeks to controvert admitted facts, the Court disregards such statements.

JHP also relies on the best evidence rule to object to statements in Zuniga's affidavit that "no provision in any agreement with any cable service provider" restricts the Defendants' use of the service, and that Bella's "charter is forfeited". (Reply, Doc. 27, ¶¶ 10–11) When attempting to prove the contents of a writing, an original of that writing is required. FED. R. EVID. 1002. Zuniga's statements at issue seek to prove the contents of a writing—i.e., the provisions of an agreement and the status of a corporate charter. As a result, JHP's objections to these statements are sustained.

## II. Analysis

JHP sues Bella's and Zuniga under the Copyright Act of the United States, 17 U.S.C. §§ 101 and 501 (2019), and the Communications Act of 1934, as amended, 47 U.S.C. § 553 (1992), or alternatively § 605 (1996). (Complaint, Doc. 1) In its Motion, however, JHP moves for summary judgment solely under the Copyright Act. (Motion, Doc. 23, 7 n.1)

### A. Standard of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine dispute of material fact exists, and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. A genuine dispute over material facts exists if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party," and the fact at issue might affect the outcome of the case. *Anderson v. Liberty*

*Lobby, Inc.* 47 U.S. 242, 248, 250 (1986). The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). All facts and inferences drawn from those facts must be viewed in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

If this evidence is provided, the burden then shifts to the responding party to present affirmative evidence to defeat the motion. *Anderson,* 477 U.S. at 257. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). "Unsubstantiated assertions, improbable inferences, and unsupported speculation, however, are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (internal quotation marks omitted).

**B. Copyright Act Claim**

"The Copyright Act prohibits infringement by '[a]nyone who violates any of the exclusive rights of the copyright owner.'" *Prostar v. Massachi*, 239 F.3d 669, 677 (5th Cir. 2001) (citing 17 U.S.C. § 501(a)). To succeed on a claim that these rights have been infringed, a plaintiff must generally demonstrate two elements: (1) ownership of a valid copyright, and (2) that a defendant violated one or more of the plaintiff's exclusive rights under the copyright. *Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 571 (5th Cir. 1994); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1001–02 (S.D. Tex. 2000). "Ownership of a valid copyright is established by proving the originality and copyrightability of the material and compliance with the statutory formalities." *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995). A copyright registration certificate is prima facie evidence of copyright validity. *Id.*; 17 U.S.C. § 410(c).

Upon a showing of validity, a copyright owner establishes infringement by demonstrating that one of its rights under 17 U.S.C. § 106 has been violated. *Id.* at § 501(a); *Avtec Sys.*, 21 F.3d 571. Copyright infringement is a strict liability offense, requiring no intent to infringe. *Buck v. Jewell–LaSalle Realty Co.*, 283 U.S. 191, 198 (1931); *Chavez v. Arte Publico Press*, 204 F.3d 601, 607 (5th Cir. 2000); *see also Fed'n of State Massage Therapy Boards v. Mendez Master Training Ctr., Inc.*, 393 F. Supp. 3d 557, 573 (S.D. Tex. 2019) ("Copyright infringement is a strict liability tort and plaintiffs do not need to prove a defendant's mental state to prosecute a claim."); *Microsoft Corp.*, 129 F. Supp. 2d at 1002 ("Neither lack of knowledge nor intent is a defense to a claim of copyright infringement.").

The Copyright Act grants the copyright owner various exclusive rights, including, in relevant part: "(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; and, "(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly". 17 U.S.C. § 106(3), (4). Violation of these rights to distribute and to perform protected intellectual property constitutes copyright infringement. *Id.* at § 501(a).

In the present matter, JHP argues that by broadcasting the Event at Bella's, Defendants violated these rights. (Motion, Doc. 23, 19) As the Court concludes that Defendants' broadcast violated JHP's exclusive right under 17 U.S.C. § 106(4) to perform the Event, the Court does not reach whether the broadcast also violated Section 106(3).[4]

### 1. Right to Performance

---

[4] The Court notes that it has found no authority definitively establishing that the broadcast of a sporting event falls within the protections of 17 U.S.C. § 106(3). On the contrary, cases considering Section 106(3) typically concern an actual reproduction of the copyrighted work and distribution of the copies by sale, rental, lease, or lending. *See, e.g., SA Music, LLC v. Amazon.com, Inc.*, No. 2:20-CV-00105-BAT, 2020 WL 3128534, at *2 (W.D. Wash. June 12, 2020), *reconsideration denied*, No. 2:20-CV-00105-BAT, 2020 WL 3798935 (W.D. Wash. July 7, 2020), *motion to certify appeal denied*, No. 2:20-CV-00105-BAT, 2020 WL 4501518 (W.D. Wash. Aug. 5, 2020) (writing that Section 106(3) "requires actual dissemination of the infringed copies by sale or other transfer of ownership, or by rental, lease, or lending"); *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 651 (S.D.N.Y. 2013), *aff'd*, 910 F.3d 649 (2d Cir. 2018) (concluding that the sale of digital music files via the internet constituted distribution under Section 106(3)); *Atl. Recording Corp. v. Anderson*, No. CIVA H-06-3578, 2008 WL 2316551, at *8 (S.D. Tex. Mar. 12, 2008) (involving an infringer who made copyrighted music available for download over a peer-to-peer network). JHP does not contend that Defendants copied and then distributed the copies of the Event.

JHP alleges that Defendants infringed its right to publicly perform the copyrighted audiovisual work under 17 U.S.C. § 106(4). (Complaint, Doc. 1, 7)

Courts have repeatedly found a violation of the right to publicly perform copyrighted works where a commercial restaurant or bar publicly broadcasts copyrighted works. *See Broad. Music, Inc. v. Tex. Border Mgmt., Inc.*, 11 F. Supp. 3d 689, 693 (N.D. Tex. 2014) (concluding that a bar infringed copyright holders rights under 17 U.S.C. § 106(4) by performing copyrighted music without authorization); *Stygian Songs v. Johnson*, 776 F. Supp. 2d 233, 238 (N.D. Tex. 2011) (granting summary judgment where a bar performed copyrighted musical works without authorization); *Broad. Music, Inc. v. Deek*, No. 4:14-CV-2894, 2017 WL 6334180, at *2 (S.D. Tex. Mar. 16, 2017) (granting summary judgment where a restaurant hosted live or recorded performances of copyrighted music without authorization); *Broad. Music, Inc. v. Midtown Beverage, LLC*, No. 4:12-CV-1617, 2013 WL 3554406, at *2 (S.D. Tex. July 11, 2013) (granting summary judgment where a hotel bar and restaurant played copyrighted songs without authorization). In fact, JHP has repeatedly relied on the Copyright Act to secure default judgment or summary judgment against various restaurants and bars that have broadcasted sporting events for which JHP held the exclusive rights. *See, e.g.*, *Joe Hand Promotions, Inc. v. Alburl*, No. 5:18-CV-1935-LCB, 2020 WL 836844, at *6 (N.D. Ala. Feb. 20, 2020) (summary judgment entered based on the unauthorized broadcast of *Mayweather vs. McGregor* fight); *Joe Hand Promotions, Inc. v. Allen*, No. CV 118-127, 2020 WL 1491288, at *5 (S.D. Ga. Mar. 19, 2020) (same); *Joe Hand Promotions, Inc. v. Jones*, No. 1:18-CV-3702-TCB, 2019 WL 5280971, at *3 (N.D. Ga. Apr. 18, 2019) (default judgment based on the unauthorized broadcast of *Mayweather vs. McGregor*); *Joe Hand Promotions, Inc. v. Infante*, No. 20 CIV. 1650 (NRB), 2020 WL 6063796, at *2 (S.D.N.Y. Oct. 14, 2020) (default judgment for unauthorized display of a boxing match).[5]

---

[5] The court acknowledges that in most of those cases, the defendant defaulted or did not contest summary judgment. In addition, in many of these decisions, the court's written decision cited generally to 17 U.S.C. § 106, and not specifically to Section 106(4).

In the present matter, Defendants have admitted that Bella's was a commercial business open on the day of the Event, and that Bella's broadcasted the Event without having obtained a license from JHP to do so. (Bella's Admissions, Doc. 23-7, 2; Zuniga Admissions, Doc. 23-7, 8) These admissions, coupled with the uncontroverted fact that JHP held the exclusive right to license the broadcast of the Event, entitle JHP to summary judgment.

In their Response, Defendants deny the admitted facts and contend that they did not know the illegality of broadcasting the Event. But as previously explained, the Defendants' failure to object or respond to requests for admissions under Federal Rule of Civil Procedure 36 results in those facts being conclusively established. *See* FED. R. CIV. P. 36(b); *In re Carney*, 258 F.3d at 421–22. As a result, Defendants cannot now submit summary judgment evidence controverting those admissions.

### 2. Laches

Defendants also assert the defense of laches, arguing that Bella's is closed and that JHP waited almost two years to file its lawsuit. (Response, Doc. 25, 23) The Copyright Act contains a three-year statute of limitations. *See* 17 U.S.C. § 507(b). Laches "cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014); *see also SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 959 (2017) ("In *Petrella,* we held that laches cannot preclude a claim for damages incurred within the Copyright Act's 3–year limitations period."). As Defendants concede that JHP initiated this action within two years of the Event, the laches defense fails.

### 3. Forfeited Corporate Charter

Finally, even if the Court considered Zuniga's statement that Bella's has forfeited its business charter, this fact would not immunize the company from lawsuit. Under the Texas Business Organizations Code, a company that forfeits its charter under Chapter 11 of the Code continues in existence until the third anniversary of its effective termination for purposes of

maintaining an action against the entity or permitting the survival of an existing claim by or against the entity. TEX. BUS. ORG. CODE § 11.356(a)(1)–(2). Bella's has not demonstrated that its charter was forfeited more than three years ago.

### C. Zuniga's Liability

Under the Copyright Act, "[d]irect liability is imposed on those who 'trespass[ ] into [the copyright owner's] exclusive domain by using or authorizing the use of the copyrighted work . . . .'" *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017) (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984)). In addition to direct liability of the infringer, joint and several liability can be imposed on any person who: (1) had the right and ability to control the infringing activity, and (2) had a direct financial interest in the activity. *Broad. Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171, 1994 WL 144812, at *2 (5th Cir. 1994); *see also EMI Apr. Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 623 (N.D. Tex. 2008); *Broad. Music, Inc. v. Armstrong*, No. EP-13-CV-32-KC, 2014 WL 2440556, at *8 (W.D. Tex. May 30, 2014). This applies to corporate officers. *Hobi*, 20 F.3d 1171, 1994 WL 144812, at *2; *see also Fed'n of State Massage Therapy Boards*, 393 F. Supp. 3d at 574.

Turning to the present matter, Zuniga was Bella's principal, owner, member, and manager. (Zuniga Admissions, Doc. 23-7, 7) On the date of the Event, he was at the restaurant, supervised activities there, and witnessed the broadcast of the Event. (*Id.*) Zuniga possessed a financial interest in and received a financial benefit from the activities at Bella's that day. (*Id.*) He also arranged the cable service at Bella's. (*Id.*)

The summary judgment record conclusively establishes that Zuniga personally engaged in the infringing conduct, had the right and ability to control that activity, and had a direct financial interest in that activity. As a result, the Court concludes that Zuniga is both directly liable and jointly and severally liable with Bella's for copyright infringement.

**D. Damages**

A "copyright owner may elect at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the infringement is willful, a court may increase the statutory damages up to $150,000. *Id.* at § 504(c)(2).

Here, the Defendants admitted that their broadcast of the Event was willful. (Bella's Admissions, Doc. 23-7, 3; Zuniga Admissions, Doc. 23-7, 9) JHP requests statutory damages of $33,500, equal to five times the licensing fee of $6,700. (Motion, Doc. 23, 21; Reply, Doc. 27, ¶ 37; J. Hand Decl., Doc. 23-2, ¶ 11; Event Rate Card, Doc. 23-5; Castillo Aff., Doc. 23-6, 2) Defendants do not contest the amount of the licensing fee or argue against a five-fold multiplier.

In various instances, courts granting a copyright owner's motion for summary judgment have awarded statutory damages of three to five times the licensing fee. *See, e.g.*, *Controversy Music v. Down Under Pub Tyler, Ind.*, 488 F. Supp. 2d 572, 578–79 (E.D. Tex. 2007) (awarding damages of $25,000 based on a licensing fees of $6,850); *WB Music Corp. v. Big Daddy's Ent., Inc.*, No. EP-05-CA-267-PRM, 2005 WL 2662553, at *5 (W.D. Tex. Oct. 18, 2005) (awarding "between four to five times the amount of licensing fees owed by Defendants, a ratio within the bounds followed by courts addressing similar cases"); *Broad. Music, Inc. v. Barflies, Inc.*, No. CIV.A. 03-304, 2003 WL 21674470, at *2 (E.D. La. July 16, 2003) (awarding damages four times the licensing fees); *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (awarding damages "approximately five times what BMI license fees would have been"); *Broad. Music, Inc. v. DeGallo, Inc.*, 872 F. Supp. 167, 170 (D.N.J. 1995) (awarding damages "approximately five times the license fee"); *Golden Torch Music Corp. v. Pier III Cafe, Inc.*, 684 F. Supp. 772, 774 (D. Conn. 1988) (awarding more than five times the license fee). Based on the summary judgment record, the Court finds that JHP is

entitled to statutory damages, and that $33,500 constitutes a just amount.

### E. Attorneys' Fees and Costs

A district court may award reasonable attorneys' fees to the prevailing party in a civil copyright action. 17 U.S.C. § 505. "Although attorney's fees are awarded in the trial court's discretion [in copyright cases], they are the rule rather than the exception and should be awarded routinely." *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994) (quoting *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985)). The district court considers factors that include frivolousness, motivation, objective unreasonableness, and the need for compensation and deterrence. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994); *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 412 (5th Cir. 2004). The party seeking attorneys' fees bears the burden of showing the hours expended through adequate records. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

JHP requests reasonable attorneys' fees and costs from Defendants. (Motion, Doc. 23, 19) Based on the summary judgment record, JHP has prevailed on its claims under 17 U.S.C. § 106(4) and is entitled to recover its attorneys' fees and costs as to this claim. But as JHP has other causes of action not raised in the Motion, the amount of those attorneys' fees and costs must await disposition of those claims.

### III. Conclusion

For these reasons, it is:

**ORDERED** that Joe Hand Promotions, Inc.'s Motion for Final Summary Judgment is **GRANTED**;

**ORDERED** that Defendants Bella's Bar & Grill LLC, d/b/a Bella's Bar & Grill and Daniel Zuniga are directly liable and jointly and severally liable for violation of 17 U.S.C. §§ 106(4) and 501;

**ORDERED** that Joe Hand Promotions, Inc. is entitled to just statutory damages in the

amount of $33,500.00; and

**ORDERED** that Joe Hand Promotions, Inc. is entitled to recovery of attorneys' fees and costs in an amount to be later determined.

SIGNED this 9th day of November, 2020.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge